# UNITED STATES DISTRICT COURT
## DISTRICT OF CONNECTICUT

| | | |
|---|---|---|
| NICOLE ALTIERI | : | |
| | : | CASE NO: |
| Complainant, | : | |
| | : | |
| | : | |
| V. | : | |
| | : | |
| | : | |
| BIC USA INC | : | OCTOBER 18, 2011 |
| | : | |
| Respondent | : | |

## AMENDED COMPLAINT

1. This action arises under Title VII of the Civil Rights Act of 1964 , as amended, codified at 42 § 2000 *et seq.,* the Connecticut Fair Employment Practices Act, Conn. Gen. Stat. § 46a-60 *et.seq.,* and Connecticut State law.

2. This jurisdiction of this Court is founded upon 28 U.S.C. § 1331 (federal question).

3. Venue is proper in the District of Connecticut pursuant to 28 U.S.C. § 1391 (b) in that the claims arose in this district and Plaintiff resides in this district.

4. Supplemental jurisdiction over Plaintiff's state law claims is invoked pursuant to 42 U.S.C. § 1367 as the claims arise out of the same transactions and occurrences as the Plaintiff's federal claims.

5. Costs, expert witness fees and attorney's fees are sought pursuant to 42 U.S.C. § 1998.

6.  Plaintiff filed a timely claim with the Connecticut Commission on Human Rights and Opportunities ("CHRO").

7.  Plaintiff filed a timely claim with the Equal Employment Opportunity Commission ("EEOC").

8.  The CHRO issued a Release of Jurisdiction to Plaintiff on March 8, 2011.

9.  The EEOC issued a Notice of Right to Sue on March 9, 2011.

## The Plaintiff

10. Nicole Altieri resides at 22 Great Oak Ridge, Seymour, Connecticut.

## The Defendant

11. Defendant BIC USA, Inc. ("BIC" or the "Company") is a corporation that maintains its headquarters at One BIC Way, Shelton, Connecticut.

## THE FACTS

12. Among other published policies, procedures and guidelines, BIC has published, standards of behavior, a harassment- free workplace policy, a statement of core values, and "Social Media Guidelines".

13. Despite the foregoing, Plaintiff has been subjected to a continuing series of lewd, offensive and demeaning sexual statements and innuendo such that the totality of the circumstances constitutes a hostile or abusive work environment.

14. The Plaintiff was hired by Defendant on or about August 2000 as a Product Manager trainee.

15. At the conclusion of the Product Manager Trainer Program, in recognition of her excellent work, Plaintiff was hired as an Assistant Trade Marketing Manager in the Stationary Department.

2

16. Thereafter, in recognition of her excellent work, Plaintiff was promoted to the position of Associate Brand Manager.

17. Thereafter in recognition of her excellent work as Associate Brand Manger, Plaintiff was promoted to the position of Brand Manager, Stationary Marketing.

18. Plaintiff has always received excellent reviews.

19. Plaintiff's current direct manager is Tim Koletsos, Director of Stationary Marketing.

20. Tim Koletsos reports directly to Traci Gentry, Vice President of Marketing.

21. Throughout the Plaintiff's employment, Plaintiff has always performed her job in a superior manner.

22. Throughout the Plaintiffs' employment her evaluations have consistent and above average with the exception of her post CHRO performance review.

23. On or about October of 2007, as part of her employment, Plaintiff and her Supervisor Tim Koletsos, as a Company function, attended a United Way Benefit at Daniel Street, Milford.

24. During the United Way benefit Tim Koletsos asked the Plaintiff if she liked the "lickey lickey" since she had recently gotten a divorce, stating that Rick McEttrick President and General Manager of BIC, thought she might be a lesbian and had asked if Plaintiff liked the "lickey lickey".

25. Later the same evening Tim Koletsos told the Plaintiff that she had a "sweet ass".

26. Sometime later, Tim Koletsos told the Plaintiff that he loved it when she wore sweaters while ogling her breasts.

27. On or about November 15, 2007 Plaintiff took the train with her supervisor, Tim Koletsos to attend a Company related business meeting in New York City.

28. Returning from the business meeting in New York City Tim Koletsos, Plaintiffs, direct supervisor, stated he did not want to go home and insisted the Plaintiff drive him to a location where he could imbibe liquor drinks.

29. After arriving at Stonebridge, Milford Connecticut Tim Koletsos proceeded to consume several liquor drinks and, over Plaintiff's protests, stated his favorite form of sexual behavior was to first have sexual intercourse and then finish in his wife's mouth.

30. Plaintiff felt the situation was out of control, extremely uncomfortable and that she did not know what to do because she was alone with her boss.

31. In Stonebridge he began talking about the lesbian bartender and stated, "don't you think she has nice breasts" while staring at Plaintiff's chest- plaintiff did not answer.

32. Plaintiff several times said that she was tired and wanted to go home.

33. At the end of the night Tim Koletsos stated to Plaintiff that if she reported him he would deny it and nobody will listen to her.

34. When Plaintiff returned Tim Koletsos to his car he refused to get out of her vehicle, repeatedly stated that he did not want to leave, Plaintiff was a nice girl, she hated him because of her refusal to complement him and brushed her hair back behind her ear while Plaintiff kept repeating that he was married with children and should go home to his wife.

35. During a Company sales meeting held in Hawaii a sales representative told the Plaintiff that she had "become wet" looking at a passing surfer and repeated the same vulgar remark that evening in front of Plaintiff to Tim Koletsos who laughed at the remark.

36. On or about September of 2009, during a BIC sales meeting presentation, Joe Franzino a Senior Brand Manager and one of the presenters used a visual of three point sizes for a ball point pen and stated that, "the size of the ball really does matter", as he snickered; Plaintiff standing behind the Senior Vice President and General Manger as well as the Vice President of Marketing observed both look at each other but do nothing.

37. On or about June 8, 2010, at a Company sales meeting dinner held at a county club in Shelton Connecticut, a supervisor, the Vice President of Sales, Patrick Cordle, was seated at a table with four men and four women and made the following lewd statements despite the efforts of employees at the table, including Plaintiff, to repeatedly attempt to change the conversation:

    1. His favorite pen is the kind where the woman is shown in a bathing suit that falls off when the pen is turned upside down;

    2. He forgets his pants wherever he goes;

    3. On one occasion when he represented BIC as a main speaker for SIFE (Students for Free Enterprise) during his speech he told the audience that he had to borrow pants from a fellow co-worker that fit except they were too tight in the crotch; this was the last time BIC was asked to be a key note speaker;

4. Clothing was optional at the country club:

5. He pulled out a cellular phone stating he was "pretty sure" wife was leaving him and asked which of the females at the table would like to accompany him home;

6. He could not use his right hand anymore to masturbate because he had a bad wrist and now has to use his left hand.

38. Later the same night a female friend, Heather Pfrommer (an associate Trade Marketing Manager) who was seated at another table, which included Tim Koletsos, Traci Gentry and other male senior managers with the Company called Plaintiff on her cell phone and said that everyone at her table had witnessed the humiliating and obscene episode.

39. Referring to paragraphs "37" and "38" above Heater Pfrommer stated to Plaintiff that she was observed holding her head in obvious distress but when Traci Gentry asked Tim Koletsos what was going on and that "it looked bad" Tim Koletsos responded that she should not be concerned because, "Nicole knows how to handle Pat."

40. Absolutely no action was taken by senior management to stop the ongoing behavior by Mr. Cordle, Vice President of Sales.

41. Plaintiff complained the next morning to her superior Tim Koletsos Director of Marketing concerning the highly disturbing, vulgar and offensive sexual comments uttered the preceding night; his response was to dismiss the entire series of events by stating that Pat Cordell was "joking".

42. It was not until Plaintiff would not let it go and stated there were two other female witnesses, at the same table that Tim Koletsos began to take the Plaintiff's complaint seriously by stating that he would tell his superior, Vice President of Marketing Traci Gentry, about the events of the night of June 8, 2010.

43. Thereafter, on or about June 10, 2010, Traci Gentry informed the Plaintiff while at her desk that she had spoken with Human Resources ("HR").

44. Thereafter, the Plaintiff was called to Human Resources ("HR").

45. When at HR despite the particulars provided by Plaintiff the emphasis was on how much Plaintiff had to drink, if the remarks occurred they were merely jocular and the Plaintiff contributed to the atmosphere by not taking more aggressive action; an investigation was promised.

46. During the pendency of the conclusion the HR investigation, referred to in paragraphs 43 through 45 above, Mr. Dennis Lamoueaux, a supervisor and Senior Packaging Engineer, came to Plaintiffs desk on June 30, 2010 to talk about business but began speaking about his previous eye surgery and that he had one more surgery to go- a penis reduction, because his back was killing him from carrying around so much weight to the distress and embarrassment of the Plaintiff.

47. On or about July 6, 2010 Plaintiff was called by HR and informed that some unspecified corrective action had been taken and that Vice President Director Cordell wanted to verbally apologize; HR emphasized that the apology has completely unrelated to any Company corrective action; Plaintiff replied if he wanted to apologize to please do it in writing.

48. Even though HR had specifically told Plaintiff that the verbal apology had nothing to do with HR or any corrective action allegedly taken by HR, on July 8, 2010 HR called the Plaintiff and repeatedly demanded that she meet with Director Cordell to because " they wanted to close the case".

49. Plaintiff told HR that she could not understand their pressure since they had expressly stated the verbal apology had nothing to do with them; at this point HR failed to offer anything further except to repeat they wanted to close the case.

50. The following day, July 9, 2010, Plaintiff wrote an e-mail to HR again stating that she remained too uncomfortable due to his previous sexually outrageous and degrading behavior to meet face to face with Director Cordell.

51. On August 16, 2010 at a Sales Meeting, the Plaintiff was directly and completely inappropriately asked  by Mr. Bruce Bartolucci, Director of Trade Marketing, if she was taking birth control pills and discussed his daughter used birth control pills during lunch.

52. On or about August 18, 2010 during a Sales Presentation, Mr. Joseph Franzino, Senior Brand Manager  inappropriately stated that our competitors could "suck it" if they did not like a new product launch with legal in the room.

53. On or about August 19, 2010 Plaintiffs supervisor, Traci Gentry Vice President of Marketing, at a Company sponsored event, in front of a group of lower level employees, inappropriately chose to talk about how she could always tell by looking at a woman's stomach if they had been pregnant and out of all possible examples repeatedly talked about a candy line that could not be launched

because the candy looked like "cute little penises" and a co-worker kept the inappropriate candy penises in her drawer at work.

54. On August 26, 2010 Director Koletsos called the Plaintiff into his office to present an award for ten years with the Company, however, among other unnecessary and embarrassing issues he proceeded, without permission, to dissect her personal life, referring to her marriage, subsequent divorce and her problem with "commitment issues" in front of Plaintiff's assistant, Ms. Megan Barbosa to Plaintiff's distress and embarrassment.

55. On or about October 5, 2010 while attending work sponsored external training, with a room full, of employees including HR, Mr. Jim Geraci from IT spoke about Blow jobs given on airplanes to those present including the Plaintiff without any reaction from HR that was present.

56. On or about October 7, 2010, at work, while eating his dessert at lunch Mr. Geraci said that, "desert was like an organism in his mouth" to the Plaintiff's distress and embarrassment.

57. On October 27th 2010 when informing Director Koletsos she was leaving work to attend her brother's wedding he once again invaded her private life by unnecessarily commenting that she was also getting married for the second time to the distress and embarrassment of the Plaintiff.

**The Plaintiff's Post CHRO Filing Behavior of BIC**

58. Plaintiff filed a complaint with the CHRO and EEOC on or about September 3, 2010.

59. On or about October 27, 2010 Plaintiff was called to HR and subjected to a four and one half hour hours of continuous questioning by two outside lawyers hired by BIC, Attorney Jeanne Colachico and Attorney Vanessa Graure who tried to intimidate, confuse, mislead and pressure the Plaintiff into altering or recanting the facts known to the Complaint- without allowing any breaks or lunch, reducing the Plaintiff to tears.

60. The outside lawyer's referred to above told the Plaintiff that "it would "be best for everyone if Plaintiff would resign from BIC and accept a number".

61. On or about November 1, 2010, Ms. Sheri Gasparon, Brand Manager, reported to the Plaintiff that she was distressed when a Customer Service representative, Ms. Teddi Mickus was shown a Playboy lighter and thanked for posing for the outside sleeve by a superior, Brand Manager Mr. Adam Blumenthal.

62. Ms. Gasparon related to the Plaintiff that upon informing her Marketing Director, Ms. Sheri Lanzorotto that she was offended, Ms. Lanzorotto declined to take any action.

63. Company employees listed as witnesses by Plaintiff were interviewed and instructed by Paul Russo of HR not to speak with her and to forget the conversation ever happened.

64. At a scheduled meeting also involving the Plaintiff on November 3, 2010, senior level brand managers, and directors, all supervisors successively ranked above Plaintiff, were milling around outside the room while Plaintiff sat inside after approximately ten minutes the Plaintiff returned to her work area only to return shortly thereafter to find the senior level personnel in the conference room.

65. During the above conference, the senior level personnel did not make eye contact and attempted to talk around the Plaintiff.

66. Contrary to years of prior, ordinary work procedure, the Plaintiff's direct supervisor, Director Koletsos has cancelled all one- on- one meetings.

67. Contrary to years of prior, ordinary work procedure, Plaintiff's direct supervisor, Director Koletsos only communicates with the Plaintiff through the use of e-mails.

68. In the event Director Koletsos had to meet with Plaintiff, he always has someone else in the room.

69. Contrary to years of prior, ordinary work procedure, Plaintiff' direct Supervisor, Director Kolestos gives work assignments and projects to Plaintiff's assistant to pass onto Plaintiff  thereby not having to deal with her directly.

70. Contrary to years of prior, ordinary  work procedure, Plaintiff's direct Supervisor, Director Koletsos, no longer comes to her work area with instructions, to discuss specific projects or even to say he is leaving for the day.

71. Plaintiff's is now isolated, her work colleagues have ceased coming to her work area to discuss projects or to speak informally.

72. The Plaintiff received a distinctly less favorable "Managers Comments and Results" write up at her yearend review from her supervisor, Director Koletstos; the first time her competency, ownership and management skill has been downgraded.

## **HR Has Failed To Respond to a Pervasive Institutional Culture That Is Insensitive Demeaning and Degrading To Women**

73.  During the past ten years the Plaintiff has suffered a succession of sexually inappropriate and explicit sexual conduct sufficiently pervasive to constitute a knowing and accepted institutional bias.

74. In 2002 or 2003 at the annual Sales Meeting the General Manager and President of BIC showed a picture of the model Kathy Ireland in a bathing suit to the mixed male-female group.

75. During the Plaintiffs midyear formal review Mr. Jerry Simmons a sales and trade marketing Director in the Plaintiff's chain of command, expressly told the Plaintiff that he would not promote her if she ever got pregnant.

76. Shocked at his statement, the Plaintiff spoke to Mr. Tim Koletsos, Director of Marketing, who did nothing, then to Plaintiff' boss Mr. Jim Gluck, Trade Marketing Manager,  who did nothing, then to Ms. Susan Lanzarotto, a Senior Brand Manager, who after speaking to her the Director of Marketing supervisor advised Plaintiff to go to HR.

77. Plaintiff called HR and met with Mr. Bill MacDougall in BIC's HR department.

78. Finally, after several months had passed the Plaintiff was called into a conference room only to be told that Mr. Simmons sexually threatening statement was neither sexual harassment nor discrimination and that Mr. MacDougall did not consider her complaint to be a formal complaint against Mr. Simmons.

.

79. Mr. MacDougall insisted Plaintiff attend a meeting with Mr. Simmons and himself at which time Mr. Simmons offered the inexcusable explanation that he spoke the same way to women in his native country of Great Britain.

80. The Plaintiff pointed out that he had been living in the United States and had been an employee for a lengthy period of time; she then asked how he would like it if the same statement was made to his daughter-no answer was forthcoming and no disciplinary action was taken.

81. The conclusion of Plaintiff's resort to HR was that:

    1. Informing a subordinater female employee that she would not be promoted if she became pregnant by senior level management was not sexual harassment, discrimination or otherwise inconsistent with BIC policies and procedures;

    2. Plaintiffs complaint was not actionable because it was not considered to be "formal", even though the Plaintiff has requested a meeting with HR, provided specifics and asked for a full investigation of the incident; and

    3. Despite BIC's ostensible policy concerning harassment or inappropriate conduct, HR afforded no recourse.

82. Plaintiff subsequent request to be moved to another department was ignored.

83. Mr. Simmons then began to further harass and humiliate the Plaintiff by:

    1. Telling the Plaintiff repeatedly that that his favorite song was "Chitty Chitty Bang Bang";

    2. Stating to her that he was "hung like a giant sub";

    3.   Produced a picture of a Mini Cooper automobile with women's breasts painted on it; and

    4.  Grabbed the Plaintiff's arm while she walked by.

84. Plaintiff again reported the unwanted sexual behavior, harassment and physical touching to BIC HR without result.

85. Therefore, as referred to in paragraphs76 through 82 and a second time referred to in paragraphs 83 through 85 the Plaintiffs resort to use of BIC HR was ineffective serving only to reinforce feelings of powerlessness, institutional insensitivity and a pervasive male cultural bias.

86. Further over the nearly eleven year period that the Plaintiff has been employed at BIC Corporate there have been only two sexual harassment training seminars.

87. Although BIC HR informed the Plaintiff that she had not suffered sexual discrimination, harassment or violation of BIC policy and procedures at the hands of Mr. Simmons the first sexual harassment seminar since Plaintiff began her employment at BIC was held in 2003.

88. The second sexual harassment seminar held at BIC occurred seven years later- only after the Plaintiff had filed a complaint with the CHRO and the EEOC.

89. During the more than ten year period that Plaintiff has been a manager BIC has not held updates concerning legal opinions and related developments.


**Plaintiff Experiences Retaliation Following the Filing of Her Complaint**

90. Since the filing of the Plaintiff's Complaint with this Court, the actions taken against her by Defendant and its employee's have escalated.

91. Throughout her employment with the Defendant, the Plaintiff has always performed her job in a superior manner and was even promoted three times by the Defendant.

92. The quality of her work was never an issue previously.

93. There are two direct reports to Mr. Koletsos in his department that perform substantially similar functions.

94. Prior to Plaintiff's Federal Complaint, she was praised for her work and received excellent reviews.

95. Immediately following the filing of her Complaint with this Court, the Plaintiff's supervisor, Mr. Koletsos has been making the Plaintiff redo almost every assignment that she is given, stating that he does not think that they are good enough, even when there are no problems with the Plaintiff's product.

96. This is making it extremely difficult for the Plaintiff to fulfill her job responsibilities when she is being made to redo almost all of her work.

97. It is also putting additional strain on other employees who work closely with the Plaintiff.

**COUNT ONE: Violation of Title VII of the Civil Rights Act of 1964, as amended-hostile work environment**

98. Plaintiff incorporates paragraphs 1 through 97 as though more fully set forth herein at length.

99. Plaintiff, a female employee of BIC, is a member of a protected class.

100. Plaintiff has consistently received above average reviews with the exception of 2010 and at all times has been more than qualified for the positions she has held and continues to hold.

101. Plaintiff filed her complaint with the EEOC and CHRO on or about September 3, 2010 claiming, *inter alia,* ongoing harassment and retaliation based upon her sex.

102. The conduct of BIC and its employees has been lewd, offensive, demeaning, outrageous and directed to Plaintiff's gender and sex.

103. The conduct has repeatedly subjected the Plaintiff to uninvited and lewd sexual and gender based remarks, comments and behavior.

104. The uninvited, offensive and lewd remarks and behavior have always been made or condoned by a number of men and, at time, women who were then and are now in positions of successively superior authority within the organizational structure of the Company to the Plaintiff

105. The conduct has been ongoing for years, has continued despite attempts by the Plaintiff to end it by twice going to the Companies human resources department and lodging complaints of sexual harassment.

106. The conduct has continued for sufficient years and is sufficiently pervasive that the employer either has knowledge or constructive knowledge of the behavior.

107.    The objectionable, uninvited, offensive and lewd remarks, comments and behavior are contrary to the Companies own policy and procedures.

108.   The objective ongoing, uninvited, continued offensive and lewd behavior has created a hostile work environment such that the Plaintiff has perceived it as hostile.

109.   Defendants conduct is abusive, lewd, insulting, outrageous, and offensive to a reasonable person and sexually harassing in violation of law.

110.   As a result of the foregoing unlawful conduct, the Plaintiff suffered and will continue to suffer damages, including but not limited to economic damages, emotional and psychological stress, distress, anxiety and the inability to enjoy life's pleasures.


**COUNT TWO: <u>Violation of Title VII of 1964 as amended-Sexual Harassment</u>**

111.   Plaintiff repeats the allegation set forth in paragraphs 1 through 97, and paragraphs 99 through 109 of  COUNT ONE as though more fully set forth at length.

112.  At a United Way Company sponsored function Tim Koletsos, Plaintiffs' direct supervisor asked her if she liked the "lickey, lickey" stating the President of the Company thought she was a lesbian.

113.  Later the same evening Tim Koletsos told the Plaintiff that "she had a sweet ass".

114.    Thereafter Tim Koletsos told the Plaintiff that he loved it when she wore sweaters while ogling her breasts.

115. Thereafter  returning from a business meeting in New York City with her boss

Tim Koletsos, entered Plaintiff's car to be driven to his car, however:

   1.  Contrary to her wishes, Plaintiff's superior refused to go home directing

       Plaintiff to drive to a bar, the Stonebridge in Milford, Connecticut;

   2.  Arriving at the bar he consumed two drinks telling the Plaintiff to get

       one which she never consumed;

   3.   Plaintiff wanted to go home, was extremely uncomfortable and she did

       know what to do because she was alone with her boss.

   4.  Without any invitation Plaintiff's boss made known his preferred form of

       sexual activity by stating he first had sexual intercourse and then

       finished in his wife's mouth.

   5.  Without any invitation Plaintiff's boss stated the bartender was a

       lesbian and said, don't you think she was nice breasts" while staring at

       Plaintiff's chest-Plaintiff did not answer.

   6.  Several times the Plaintiff said she was tired and wanted to go home.

   7.  At the end of the night Tim Koletsos stated to Plaintiff that if she

       reported him he would deny everything and nobody would listen to her.

   8.  When Plaintiff returned Tim Koletsos to his car he refused to get out of

       her car repeatedly stating that he did not want to leave, Plaintiff was a

       nice girl, she hated him because of her refusal to complement him and

       brushed her hair back behind her ear while Plaintiff kept repeating that

       he was married with children and should go home to his wife.

116.  At a Company sales meeting in Hawaii Plaintiff was told she had "become wet" looking at surfer; the sales representative repeated the unwanted lewd and offensive statement in front of Plaintiff to her boss, Tim Koletsos who laughed and took no other action.

117.  During a BIC sales meeting, Joe Franzino, a senior Brand Manger used  a visual of showing three different ball point sizes the unwanted lewd sexual statement that "size really does matter" and then snickered; neither the General Manager nor the Vice President of Marketing who were present took any action.

118.  On or about June 8, 2010 during a Company sales meeting held at a county club in Shelton Vice President of Sales, Patrick Cordle was seated at a table with four women and four men all of lower employment rank.

119.  Seated at the table Vice President Cordel proceeded to make a series of sexually demeaning, lewd statements that were unwanted and offensive to Plaintiff and other reasonable women.

120.  Other supervisors and successive levels of management including, Tim Kolestos, were seated at a nearby table and witnessed Vice President Cordel's repeated sexually abusive, offensive, demeaning and lewd behavior toward the female subordinates but took no action-in fact Tim Kolestos condoned the harassing acts by stating that "Nicole knows how to handle Pat" in response to Traci Gentry's statement that "it looked bad".

121.  The following day when Plaintiff directly reported the unwanted sexually demeaning and offensive sexual behavior  to her supervisor rather than follow BIC procedure Tim Kolestos was dismissive of the entire series of offensive

behavior referring to it as a "joke" until Plaintiff reminded him that there were other female witnesses.

122.   BIC Human Resources was also dismissive stating that the Plaintiff had been drinking, it could not have happened or was merely joking and that the Plaintiff was bore responsibility because she failed to effectively prevent the statements from being uttered by the very senior level Vice President of Sales.

123.   Although promised the complainant, Plaintiff was never informed of any results of the purported investigation.

124.   Several months later without any other information than the bald statement that some unspecified corrective action had been taken; the Plaintiff was told BIC HR wanted to close the case.

125.   Although Plaintiff was specifically informed it had nothing to do with her complaint or BIC HR, she was instructed to accept a verbal apology from Vice President Cordle.

126.   Plaintiff remained so personally offended by the sexually demeaning and lewd behavior and the dismissive/cavalier manner by which she was treated by HR; she continued to feel abused and humiliated and could not meet with Vice President Cordel despite several directives from HR.

127.   Following the Cordle situation no action was taken by HR to ether clarify or otherwise remind management of its responsibilities regarding sexual harassment under the law or under the policies of BIC.

128.  Years previously, in 2003, the Plaintiff had complained to BIC HR of uninvited
lewd and abusive sexually harassing statements by Mr. Jerry Simmons, a sales
and trade marketing Director.

129.  Director Simmons had stated to Plaintiff during her review that he would never
promote her if she became pregnant as well as making other improper sexual
remarks.

130.  Plaintiff met with Mr. William MacDougall in BIC HR who promised an
investigation

131.  Several months later Mr. MacDougall spoke with the Plaintiff only to be told
that the conduct was not sexual harassment or discriminatory and the Plaintiff
had never filed a formal complaint because she had not put it writing despite the
actual meeting at HR, the HR investigation and desire of the Plaintiff to press the
complaint.

132.  Plaintiff request to be moved to another department was denied and thereafter
she was subjected to further repeated uninvited sexual harassment by Mr.
Simmons.

133.  Therefore on two separate occasions the Plaintiff attempts to make use of the
Company grievance and HR procedure was ineffective, personally demoralizing,
protective of upper level management and Plaintiff was made to feel she was a
cause of the problem.

134.  Plaintiff was again placed in an uncomfortable, humiliating situation when
Senior Brands Manger Mr. Bruce Bartolucci probed into her personal and private
life concerning the use of birth control pills.

135.  More evidence of the pervasive unwanted, unnecessary and offensive sexually oriented behavior occurred when the Vice President of Marketing stated without either invitation or business necessity stated that she could always tell if a woman had had a baby by looking at their stomach-that was at a company event, not an informal social gathering.

136.  Again demonstrating the out of control institutional climate at BIC during the same event the Vice President of Marketing chose out of all possible examples to equate a proposed candy line to "cute little penises".

137.  On August 26, 2010 without reason or invitation Plaintiffs boss, Tim Koletsos deliberately choose without permission and without regard to the consequences to expose many aspects of the Plaintiffs private life including her divorce and assert the Plaintiff had commitment issues in the presence of the Plaintiff's assistant.

138.          The continued presence of an institutional, male dominated sexual environment know, condoned and tolerated at BIC is more further demonstrated by:

1.  The ability of Mr. Jim Gerard to speak in the workplace without fear of either reprimand or discipline about the lewd and offensive subject of "blow jobs" given on airplanes with HR present; and

2.  Just two days later, Mr. Gerard was sufficiently comfortable with the atmosphere at BIC felt he openly uttered the lewd statement during lunch that "desert was like an organism to the mouth" without regard to

the moral, ethical or religious feelings of other employees, male or

female including the Plaintiff.

139.	The pervasive references to women including Plaintiff in uninvited, lewd

and offensive terms by successive levels of supervisory management is sufficient

to constitute discrimination under the "terms conditions and privileges" language

of her employment in violation of Title VII of the 1964 Civil Rights Act, as

amended.

140.	Again, on two separate occasions the Plaintiff had attempted to make use

of Defendant's HR Department without being able to stop the unwelcome vulgar

and obscene sexually harassing behavior either engaged in or condoned by

successive institutional superiors.

141.	The following month the Plaintiff filed her CHRO and EEOC Complaint.

142.	As a result of the foregoing unlawful conduct, the Plaintiff suffered and will

continue to suffer damages including but not limited to economic damages and

loss of benefits, emotional distress and psychological stress, distress, anxiety

and the ability to enjoy life's pleasures.


**COUNT THREE: Retaliation in violation of the Civil Rights Act of 1964 , as**

**amended**

143.	Plaintiff incorporates paragraphs 1-97 and paragraphs 99-109 of COUNT

ONE and paragraphs 112-141 of COUNT TWO as though more fully set forth

herein at length.

144.  Plaintiff filed her complaint with the CHRO and EEOC on or about September 3, 2010.

145.  Plaintiff was subjected to four and one half hours of a continuous barrage of questioning by two outside lawyers hired by BIC who demonstrated little of no interest in the obtaining the facts from the Plaintiff; rather they subjected the Plaintiff to continuous and deliberate threat, intimidation, attempts at misdirection, instill confusion and unrelenting pressure without break or lunch, reducing the Plaintiff to tears.

146.  During the hostile, unrelenting attempts to "break" the Plaintiff they represented that the employer wished the Plaintiff to resign from BIC's employ as soon as possible.

147.  Company employees referred to as witnesses by the Plaintiff in her CHRO and EEOC complaints were warned not to speak or have contact with the Plaintiff.

148.  In November of 2010, at a scheduled work related meeting senior level personnel engaged in the "spectacle" of not entering a conference room until the Plaintiff first left the room and then returned.

149.  During the same conference referred to in the above paragraph the senior levels personnel failed to make eye contact and attempted whenever possible to speak around the Plaintiff thereby attempting to exclude and reduce her presence.

150.  Plaintiffs boss, Director Koletsos deliberately degraded Plaintiff's ability to successfully carry out her job and isolated her by the following:

1. Deliberately ceasing oral communications-which had been the prior norm including discussion of work projects and related instructions often necessary to efficient and timely completion as specifically required by successor level superiors;

2. Communicating only through e-mail with a copy to his superior;

3. Ensuring that a witness is always present on the rare occasions when he was forced to meet with the Plaintiff.

4. Deliberately giving work assignments to Plaintiffs assistant instead of to the Plaintiff, as was the consistent prior practice, diminished Plaintiffs status, reducing her authority and inducing greater opportunity for error on projects.

5. Deliberately refusing to come into Plaintiff's work area in contrast to other employees thereby diminishing plaintiffs' employment standing and desirability within the Company to subordinates and colleague.

151. Colleagues or superior level personnel have by example and word behaved in a way to isolate the Plaintiff.

152. Plaintiff has received a year end review that contains significantly more critical Managerial comments.

153. By word and action Defendant is using its supervisory authority to segregate the Plaintiff from other colleagues.

154. Defendant is using its supervisory authority to actively hinder the Plaintiff from being successful in her job dissuading her from continuing her employment at

Defendant as well intimidating others from bringing a charge of discrimination against the employer.

155.  Defendant's actions are in violation of anti-retaliation Section 703(a)(2) of Title VII of the Civil Rights Act, as amended.

156.  As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to economic damages, emotional and psychological stress and distress anxiety and the ability to enjoy life's pleasures.

157.  Plaintiff is seeking Damages as a result of Defendant's unlawful conduct.

## COUNT FOUR: Violation of Conn. Gen Stat § 46(a)-60(a)(1)

158.  Plaintiff incorporates paragraphs1-97 and paragraphs 112 though 141 of COUNT TWO as through as though more fully set forth herein at length.

159.  Plaintiff has been employed by BIC USA INC since August of 2000.

160.  Plaintiff has been an exemplary employee having been promoted three times and is now the Brand Manager in the Stationary Unit of BIC.

161.  Plaintiff has received uniformly above average year end reviews each year until the year 2010, having filed a complaint with the CCHRO and EEOC in September of that year.

162.  Plaintiff complained of multiple uninvited acts of discriminatory and abusive sexual harassment over a prolonged period of time.

163.  Plaintiff was subjected to a series of uninvited lewd, abusive, and offensive sexually harassing statements and behavior by her supervisors and other successor levels of management over a ten year period.

164.   Plaintiff recounted two occasions when she followed BIC procedure and policies and brought complaints of uninvited lewd remarks and other sexually demeaning behavior by her own supervisor and successor levels of supervisors to BIC HR.

165.   On each occasion despite a open and obvious series of violations of BIC policy and procedures relating to inappropriate sexual harassing behavior by BIC managers BIC HR blocked, covered up and concealed the sexually lewd and obscene sexual harassment- and it continued.

166.   The conduct is ongoing.

167.   The continued lewd remarks and sexually harassing behavior constitutes discrimination in the terms, conditions or privileges of employment because of the Plaintiff 's sex pursuant to Conn. Gen. Stat. 46a-60(a)(1).

168.   As a result of the foregoing unlawful conduct, the Plaintiff has suffered damages including but not limited to economic damages, emotional and psychological stress, distress, anxiety and the ability to enjoy life's pleasures.

## COUNT FIVE: Violation of Conn. Gen. Stat. § 46a-60(a)(4)-Retaliation

169.   Plaintiff incorporates paragraphs 1 through 97 and Paragraphs 144 through 154 of COUNT THREE as though more fully set forth herein at length.

170.   Plaintiff filed her complaint with the CHRO and EEOC on or about September 3, 2010.

171.   By filing the CHRO and EEOC the Plaintiff, in writing, publically placed the Defendant, its agents, servants and employees, including successive levels of

Management had conducted themselves in an abusive, lewd, sexually harassing intimidating, insulting, outrageous and offensive manner and created a hostile work environment.

172.  Defendants knew or should of known of the ongoing, outrageous and pervasive, series of lewd, outrageous sexually harassing events but condoned and failed to act.

173.  In retaliation for Plaintiff filing a CHRO and EEOC Complaint the Defendant, its agents servants and employees did the following among other act and actions:

1. Plaintiff was subjected to four and one half continuous hours of intimidating, hostile, threatening and coercive questioning.

2. Plaintiff attempted to block, conceal and inhibit the CHRO investigation by telling her to resign from BIC and to pick a number.

3. Engaged, condoned or partook in numerous employment actions against Plaintiff including, but not limited to:

4. Isolated the Plaintiff from co-workers and successive levels of Management.

5. Deliberately altered the terms, conditions and benefits of the  work environment with Plaintiff's supervisor, assistant and other employees such that it was more difficult to successfully and timely interact and complete projects and assignments.

6. Altered the work relationship with Plaintiffs subordinate to the detriment of the relationship and Plaintiffs interactions with other managers and level employees.

7.  Provided a less favorable performance review.

174. Defendants conduct is unlawful and in violation of law.

175.  As a result of the foregoing unlawful conduct, the Plaintiff suffered and will

continue to suffer damages, including but not limited to economic damages and

loss of benefits, emotional and psychological stress, distress, anxiety, and the

ability to enjoy life's pleasures.


**COUNT  SIX: Violation of Conn. Gen. Stat. §  46a-60(a)(8)**

176.  Plaintiff  incorporates paragraphs 1 though 97, Paragraphs 112 though 141 of

COUNT TWO, paragraphs 159 through 166 of COUNT FOUR and paragraphs

170 through 173 of COUNT FIVE as though more fully set forth at length.

177.  Plaintiff, a female employee of BIC is a member of a protected class.

178.  Plaintiff has consistently received above average reviews, with the exception

of the year ending 2010.

179.  Plaintiff filed a complaint with the CHRO and the EEOC on or about

September 3, 2010 claiming *,inter alia,* a pervasive, institutionalized culture

characterized by an unwanted, ongoing  course of sexually harassing, degrading,

offensive, lewd, insulting gender and sex based remarks, comments and

behavior.

180.  The foregoing remarks, comments  and behavior have been made or

condoned by a number of men and, at a time, women who were then and are

now in positions of successively superior authority within the organizational

structure of the Company.

181.    The conduct has been ongoing for years and has continued despite efforts by the Plaintiff to end it by twice going to the Companies human resources department and lodging complaints of unwelcome, abusive, degrading, lewd, offensive, obscene, sexual behavior and sexual harassment.

182.  On each occasion the Companies Human Resource Department has resisted and the serious nature of the complaints such that a full, complete and searching investigation has failed to occur and appropriate discipline consistent with the policies of Defendant or the law has not occurred.

183.  The conduct has been ongoing and continued for many years; it is sufficiently open and pervasive and either engaged in or condoned by sufficiently successive members of management level employees that the Company either has knowledge or constructive knowledge of the unlawful and unethical behavior.

184.  The objectionable, uninvited, offensive and lewd remarks, conduct and behavior are contrary to the Companies own policies and procedures.

185.  After filing a Complaint with the CHRO and EEOC the Defendant has used its superior authority to subject the Plaintiff  to acts, actions and conduct that have had the purpose or effect  of substantially interfering with her work environment, including but not limited to  offensive, humiliating, isolation, intimidating and a demeaning working environment.

186.  As a result of the foregoing unlawful conduct, the Plaintiff has suffered and continues to suffer damages, including but not limited to economic damages, emotional and psychological stress, distress, anxiety and the ability to enjoy life's pleasures.

**COUNT SEVEN: Negligence**

187.   Plaintiff incorporates paragraphs 1 though 97, paragraphs, 99 through 109 of

COUNT ONE, paragraphs 112 through 141 of COUNT TWO and  paragraphs

144 through 154 of COUNT THREE as though more fully set forth herein at

length.

188.   Defendant has more than fifty employees.

189.   Defendant has a Human Resources Department that, *inter alia,* is responsible

though internal practices, procedures, publications, seminars, and other means

to disseminate, publish, expose and disseminate knowledge and information

sufficient to reasonably ensure Defendant and each of its employees act in

compliance with all applicable federal and state laws and administrative

procedures and guidelines as well as those published, disseminated and held out

as the "Vision and Values", beliefs and guidelines particular to Defendant, BIC

USA.

190.   Plaintiff has been employed by Defendant since August of 2000.

191.   During her employment Plaintiff has been repeatedly subjected to uninvited,

unwelcome, sexually lewd, obscene, insulting, demeaning and highly offensive

comments, statements and behavior.

192.   The above uninvited sexual comments, statements and behavior have been

uttered or condoned by successive levels of supervisors up to and including

numerous Vice Presidents.

193.   Following the filing Complaints with the CHRO and EEOC the Plaintiff has and

continues to be subjected to retaliation in the work place.

194.   One sexual harassment training program was held on or about 2003 involving Plaintiffs Division and another, seven years later but after Plaintiff filed her CHRO & EEOC Complaint.

195.   Thereafter, on or about May 27, 2011 Defendant published four page internal document purportedly restating and reiterating BIC's "Vision" (the " Vision Document") with regard to discrimination and harassment in the workplace.

196.   Conn Gen, Stat.§§ 46a-54(15) and 46a-54-204, requires sexual harassment training as a mandatory requirements for Connecticut employers with more than fifty or more employees.

197.   In order to remain in compliance with Federal law a similar employer is required to hold retraining every two years.

198.   Connecticut law "recommends" retraining every two years.

199.   Defendant BIC has failed to provide sexual discrimination or sexual harassment training within six months of each new employee hired.

200.   Defendant BIC has failed to provide retraining every two years as required under Federal law or as a "best practice" under Connecticut State law.

201.   Plaintiff has been the victim of repeated, unwanted sexual statements, comments, behavior and harassment by successive levels of supervisory employees.

**202.**   The pervasive, longstanding and ongoing  sexual comments, statements, behavior  could not reasonably have continued but for the neglect, negligence and dismissive training and enforcement by BIC and the BIC HR Department state.

**203.**  As a result of the foregoing negligent training, negligent enforcement and

negligent behavior by Defendant BIC its HR Department the Plaintiff has suffered

and will continue to suffer damages, including but not limited to emotional and

psychological stress, distress, anxiety and the ability to enjoy life's pleasures.

**204.**  The Plaintiff seeks damages.


**COUNT EIGHT: Intentional Infliction of Emotional Distress**

205.  Plaintiff hereby incorporates Paragraphs 1 through 97, paragraphs 99 through

109 of COUNT ONE, paragraphs 112 through 141 of COUNT TWO, and

paragraphs 144-154 of COUNT THREE as though more fully set forth herein at

length.

206.  Defendant's conduct was extreme and outrageous.

207.  Defendant's conduct was beyond the bounds of decency and is intolerable in

the workplace.

208.  As discussed in detail above, the Defendant allowed an environment in its

workplace that was permeated with sexually harassing behavior, largely

perpetrated by the Defendant's Managers, Directors, Vice-Presidents and upper

management.

209.  Despite repeated complaints, Defendant's Managers, Directors, Vice-

Presidents and upper management continued to engage in this outrageous

behavior without any intervention or remedial action by the Defendant.

210.  The individuals responsible for ensuring that the workplace is free of sexually

harassing behavior, pursuant to Defendant's policies and procedures, were the

same individuals creating the extreme and outrageous sexually harassing environment described above.

211.  As a result of the foregoing conduct, Plaintiff has suffered and will continue to suffer damages including but not limited to lost wages, fringe benefits, health insurance, emotional and psychological distress, stress, anxiety and loss of the ability to enjoy life's pleasures and activities.

212.  Plaintiff is seeking damages as a result of Defendant's unlawful conduct.


## PRAYER FOR RELIEF

Wherefore the Plaintiff prays that this Court awards:

1.  Money damages and costs;

2.  Punitive damages;

3.  Attorney's fees and expert witness fees;

4.  Prejudgment interest;

5.  That this Court retain jurisdiction over this matter;

6.  Trial by jury;

7.  Such other relief as this Court deems just, fair and equitable.

> THE PLAINTIFF,
> NICOLE ALTIERI
>
>
> By:_____/s/_____
> Eugene N. Axelrod, Esq.(ct00309)
> Axelrod & Associates, LLC
> 8 Lunar Drive
> Woodbridge, CT 06525
> T. 203.389.6526
> F.203.389.2656
> Eaxelrod@axelrodlegal.com